IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

KRISTIN BUNN GOZA, *individually*
*and a Class of similarly situated persons*

                                                                   PLAINTIFF

VS.                              CASE NO. 12-CV-6125

MULTI-PURPOSE CIVIC CENTER FACILITIES
BOARD FOR PULASKI COUNTY, ARKANSAS d/b/a
VERIZON ARENA; LIVE NATION ENTERTAINMENT, INC.;
AND TICKETMASTER, LLC d/b/a TICKETMASTER            DEFENDANTS

## MEMORANDUM OPION AND ORDER

Before the Court is a Motion to Stay and to Compel Arbitration filed on behalf of Separate Defendants Ticketmaster, L.L.C. ("Ticketmaster") and Live Nation Entertainment, Inc. ("Live Nation"). (ECF No. 53). Plaintiff has filed a response and has filed a supplement to that response. (ECF No. 62 & 110). Defendants have filed a reply. (ECF No. 68). A hearing on the motion was held on May 21, 2014. (ECF No. 103). After reviewing the parties' written briefs, the arguments made at the hearing, and all relevant exhibits, the Court finds that the motion should be granted.

## BACKGROUND

Plaintiff filed this class action on October 12, 2012 in the Circuit Court of Clark County Arkansas. (ECF No. 3). On November 9, 2012, the case was removed to this Court by Defendants Ticketmaster and Live Nation. (ECF No. 1). Plaintiff's Complaint alleges that Defendants, via Ticketmaster, charged greater than face value for tickets to events held at

Verizon Arena.[1]  Plaintiff alleges that these charges are in violation of Ark. Code Ann. § 5-63-201.  Plaintiff's Complaint includes claims for unjust enrichment, civil conspiracy, and violations of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, *et seq*.  Plaintiff defines the proposed class as follows:

> All Arkansas residents…who have paid the Defendants' charges which were in excess of the face value of tickets for ticketed events held at Verizon Arena for the previous five (5) years preceding the filing of this Complaint up through the date of the judgment in this case.

In support of her allegations, Plaintiff's Complaint listed four concerts for which she claims she was charged excessive ticket prices.  Each of the concerts listed took place between 2008 and 2010 at Verizon Arena.  The Complaint did not include information regarding an account name or email address used to purchase the tickets from the Ticketmaster website.  The Complaint did include order numbers from the Ticketmaster website for each ticket purchase.

In September of 2013, Plaintiff provided discovery responses to Defendants that revealed Ticketmaster purchases that were not included in the Complaint.    The discovery responses showed that Plaintiff had purchased tickets through the Ticketmaster website in December 2011.  This December 2011 purchase was made with a different account than the account used to make the 2008-2010 purchases listed in the Complaint.

While preparing for depositions in October 2013, Defendants looked closely at the September 2013 discovery responses and realized the significance of the 2011 purchase.  Ticketmaster and Live Nation added an arbitration provision to their terms of use in June 2011.  According to Ticketmaster and Live Nation, they realized for the first time that they could have a

---

[1] Verizon Arena is located in North Little Rock, Arkansas.

valid arbitration defense as a result of Plaintiff's December 2011 purchase.  Quickly thereafter, Live Nation and Ticketmaster filed the Motion to Compel Arbitration.[2]

Live Nation and Ticketmaster maintain that Plaintiff's alleged acceptance of the Ticketmaster website's Terms of Use in 2011 requires all of Plaintiff's claims to be arbitrated— even those claims based on ticket purchases made prior to 2011.  The relevant portions of the December 2011 Terms of Use provide:

> A.  Live Nation and you agree to arbitrate all disputes and claims between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:
>
> -claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory, including, without limitation, claims relating to your use of Live Nation's website www.livenation.com, or Ticketmaster's website www.ticketmaster.com, as the case may be (collectively, the "Websites"), any statements or advertising on the Websites, your purchase of tickets through the Websites, any fees or other amounts you paid to Live Nation in connection with the purchase of tickets through the Websites, and/or the delivery of tickets to you that you purchased through the Websites;
>
> -claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising);
>
> -claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and
>
> -claims that may arise after the termination of this Agreement.

The terms of the arbitration provision are very broad.  It clearly covers tickets fees and claims arising from those fees.  It also explicitly states that it covers claims that arose prior to the 2011 agreement.  Plaintiff does not dispute that her claims fall within the terms of the arbitration provision.  Rather, Plaintiff claims that (1) the Defendants' have waived their right to compel

---

[2]One week prior to filing the motion to compel arbitration, Ticket Master and Live Nation filed a motion to amend their answer to include the affirmative defense of arbitration.  The motion to amend was granted (ECF No. 108) and the Amended Answer was filed on June 9, 2014.  (ECF No. 109).

arbitration; (2) the arbitration agreement is unenforceable because it lacks mutuality; and (3) the arbitration agreement is unconscionable.  The Court will address each of these arguments in turn.

DISCUSSION

**A.  The validity of the arbitration agreement**

Before addressing waiver, the Court will consider whether the parties entered into a valid agreement to arbitrate.  *E.E.O.C. v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561, 565 (8th Cir. 2007) (quoting *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004)).  Whether an arbitration agreement is valid is a matter of state contract law.  *Id.*

Under Arkansas law, the essential elements of a contract are: "(1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual obligations, and (5) mutual agreement." *Diversicare Leasing Corp. v. Nowlin*, No. 11–cv–1037, 2011 WL 5827208, *3 (W.D. Ark. Nov. 18, 2011).  Plaintiff argues that two of these elements are lacking in this case:  mutual agreement and mutual obligations.  Plaintiff also argues that the arbitration agreement is unconscionable.

*1.  Mutual Agreement*

While Plaintiff's briefing does not dispute the manner in which she accepted the Ticketmaster website Terms of Use, her counsel raised the issue of mutual agreement at the May 21 hearing.  Ticketmaster has submitted evidence showing that the December 2011 version of their website required users to assent to the Terms of Use at the time they purchased tickets:  "It is impossible for a Ticketmaster customer to purchase tickets from ticketmaster.com without clicking on the 'Submit Order' button next to the language stating that by doing so, the customer manifests assent to the Purchase Policy, which includes the Terms of Use."  (ECF No. 54, p. 2).[3] Ticketmaster also points out that, when Plaintiff created her second Ticketmaster account on

---

[3] As evidence of the form of the website in December 2011, Ticketmaster has submitted the affidavit of Angela Miles-Powell, Vice President of Client Development for Ticketmaster.  (ECF No. 53, Exh. B). The affidavit contains screen shot exhibits of what the website would have looked like in December 2011.

December 9, 2011, she was again required to accept the Terms of Use before completing the accounting registration process.  Accordingly, Ticketmaster maintains that Plaintiff assented to Ticketmaster's Terms of Use on at least two occasions in December 2011.

Plaintiff does not dispute that "clickwrap agreements" like the one described above are routinely upheld as valid and enforceable.  *Treiber & Straub, Inc. v. UPS*, 474 F.3d 379, 382 (7th Cir.2007); *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1255 (10th Cir. 2012) cert. denied, 133 S. Ct. 2009, 185 L. Ed. 2d 868 (U.S. 2013); *Carson v. LendingTree LLC*, 456 F. App'x 234, 236 (4th Cir. 2011); *Siebert v. Amateur Athletic Union of U.S., Inc*., 422 F. Supp. 2d 1033, 1039 (D. Minn. 2006); *Burcham v. Expedia, Inc*., 4:07CV1963 CDP, 2009 WL 586513 (E.D. Mo. Mar. 6, 2009). Rather, Plaintiff seems to argue that Ticketmaster should be required to offer the exact webpage that Plaintiff viewed in December 2011 as proof of her acceptance of the terms.  Plaintiff hypothesizes that the website could have malfunctioned on the day Plaintiff was using it.  However, Plaintiff has offered no law in support of her arguments regarding the required proof, and Plaintiff has offered no evidence that would call into question the affidavit and exhibits submitted by Ticketmaster.  Accordingly, the Court is satisfied that Ticketmaster has met its burden of demonstrating Plaintiff's assent to the Terms of Use.

## 2. Mutual Obligations

Plaintiff also argues that the arbitration agreement is invalid because Ticketmaster's Terms of Use lack mutual obligations.  Specifically, Plaintiff argues that there is a lack of mutuality because Ticketmaster allegedly reserves the right to change the Terms of Use and retroactively apply those changes without the consent of the Plaintiff.  Plaintiff is referring to the introductory paragraph of Ticketmaster's Terms of Use which states:

> We reserve the right at any time to…change the terms and conditions of these Terms. … Any changes we make will be effective immediately upon

5

> notice, which we may provide by any means[.]… Your continued use of the
> Site after such notice will be deemed acceptance of such changes.  Be sure
> to return to this page periodically to ensure familiarity with the most current
> version of these terms.

(ECF No. 53, Exh. B, p. 44).

Plaintiff argues that the reservation above would allow Ticketmaster to completely alter or terminate their obligations under the agreement at any time.  Ticketmaster disagrees with Plaintiff's interpretation of the above provision:

> Ticketmaster does not and cannot contend that posting a new Terms of Use
> on its website today would impose new contractual terms upon a customer
> who purchased tickets on December 9, 2011. That customer's purchase was
> subject to the Terms of Use as they existed on December 9, 2011. A change
> in the Terms of Use posted today would affect future customers, including
> former customers who affirmatively manifested assent to the new
> agreement.

(ECF No. 68, p. 9).  Ticketmaster argues in the alternative that this issue of mutuality is not a question that this Court should resolve.  Ticketmaster contends that this is an issue that must be decided by the arbitrator.  The Court agrees.  Plaintiff's arguments about mutuality refer to the Terms of Use as a whole—not just the arbitration provision.  These types of general attacks on the validity of the whole contract are to be resolved in arbitration.  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1806 (1967); *M.A. Mortenson Co. v. Saunders Concrete Co., Inc.*, 676 F.3d 1153, 1157 (8th Cir. 2012) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70, 130 S. Ct. 2772, 2778 (2010)); *Benoay v. Prudential-Bache Sec., Inc.*, 805 F.2d 1437, 1441 (11th Cir. 1986) ("If...[Plaintiff's] claims of adhesion, unconscionability, waiver of judicial remedies without knowledge, and lack of mutuality of obligation pertain to the contract as a whole, and not to the arbitration provision alone, then these issues should be resolved in arbitration."); *Curtis v. Newhard, Cook & Co., Inc.*, 725 F. Supp. 1072, 1074 (E.D. Mo. 1989) ("[C]laims attacking the entire contract rather than the arbitration

6

clause in particular are subject to arbitration.").  Accordingly, Plaintiff's arguments regarding a lack of mutuality in the Terms of Use cannot defeat Defendants' request to compel arbitration in this case.

### 3. Unconscionability

Plaintiff maintains that several of the terms in the arbitration provision are unconscionable.  The Arkansas Supreme Court has described an unconscionable contract as one that "'no man in his senses and not under delusion would make on the one hand, and . . . no honest and fair man would accept on the other.'"  *LegalZoom.com, Inc. v. McIllwain*, 429 S.W.3d 261, 264 (Ark. 2013) (quoting James J. White & Robert S. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 4-1 (3d ed. 1988)).  To prevail on an unconscionability challenge, Plaintiffs must prove both procedural and substantive unconscionability. *Barnard v. Townsquares Media, LLC*, No. 12-cv-4110, 2013 WL 1755581, at *3, (W.D. Ark. April 24, 2013) (citations omitted).  "Procedural unconscionability deals with the manner in which a contract was entered into."  *Id.* (quotations omitted).  "It considers 'whether the aggrieved party was made aware of and comprehended the provision in question.'"  *Id.* (quoting *State ex rel. Bryant v. R & A Inv. Co., Inc.*, 336 Ark. 289, 296, 985 S.W.2d 299, 302 (1999)).  "[S]ubstantive unconscionability . . . looks to the terms of the contract and whether they are harsh, one-sided, or oppressive."  *Id.* (quotations omitted).

Plaintiff's sole argument for procedural unconscionability is that Plaintiff was "forced" to use Ticketmaster's services to attend concerts at Verizon Arena and therefore was forced to agree to the Terms of Use.  Plaintiff cites no law in support of her argument.  Plaintiff's statements ignore that fact that she was free to bypass Ticketmaster and purchase tickets directly from the box office at the Verizon Arena.  Accordingly, the Court fails to see how Plaintiff could

have been "forced" to utilize Ticketmaster to purchase tickets.  These circumstances simply do not rise to the level of procedural unconscionability.  Moreover, Plaintiff's procedural unconscionability argument relates to the Terms of Use as a whole rather than to the arbitration provision specifically.  As explained previously, this type of attack on the validity of the contract is to be address by the arbitrator.

Because Plaintiff has failed to show procedural unconscionability in the arbitration provision, the Court need not address her arguments regarding substantive unconscionability. Nonetheless, the Court will address the remainder of Plaintiff's concerns.

First, Plaintiff argues that the arbitration provision is substantively unconscionable because it applies retroactively to claims that might have arisen prior to her acceptance of the Terms of Use in 2011.  Plaintiff offers no law in support of her assertion that the retroactive application of an arbitration provision is unconscionable.  In fact, a great number of courts have construed arbitration agreements to include claims that arose before the execution of the arbitration agreement. *Enderlin v. XM Satellite Radio Holdings, Inc.*, 4:06-CV-0032, 2008 WL 830262 (E.D. Ark. Mar. 25, 2008); *Decker v. Bookstaver*, 4:09-CV-1361, 2010 WL 2132284 (E.D. Mo. May 26, 2010); *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc*., 13 F.3d 330, 332 (10th Cir.1993); *Mail–Well Envelope v. International Ass'n of Machinists and Aerospace Workers*, 916 F.2d 344, 346–37 (6th Cir.1990); *Carlisle v. CitiMortgage, Inc.*, 2007 WL 1557411 *3, No. 4:06–CV–677 (E.D.Mo. May 25, 2007).  Thus, Plaintiff's claims regarding the unconscionability of retroactive application are without merit.

Second, Plaintiff states that it is unconscionable to require Plaintiff to pay a $250.00 arbitration fee and travel to Dallas for the arbitration.  Again, Plaintiff cites no law in support of her arguments. This $250.00 fee is comparable to fees required to file a lawsuit.  Accordingly,

the Court finds nothing inherently unconscionable about the existence of the fee or the amount. *EEOC v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561, 567 (8th Cir. 2007) ("The fact that a party will incur litigation costs and attorney's fees in an arbitral forum does not make that forum unconscionable, she would generally face those fees regardless of forum.").  As to the arbitral forum of Dallas, the arbitration provision does not actually require travel to Dallas.  The Terms of Use explicitly give Plaintiff the option to choose "whether the arbitration will be conducted solely on the basis of documents submitted to the arbitrator, through a telephonic hearing, or by an in-person hearing." (ECF 53, Exh. 2).  In light of the choices provided to Plaintiff in the arbitration provision, the Court finds this claim of unconscionability to be without merit.

For the reasons explained above, the Court finds that the parties in this case entered into a valid arbitration agreement.  The Court will now address whether Ticketmaster and Live Nation have waived their right to compel arbitration.

## B.  Waiver

Plaintiff argues that, even if a valid arbitration agreement exists, Ticketmaster and Live Nation have waived their right to compel arbitration by failing to timely file their motion to compel.  This action was filed in October 2012, and Defendants' arbitration defense was not raised until October 2013.  (ECF No. 52).  While there was clearly a substantial delay between the commencement of this action and the raising of the arbitration defense, Ticketmaster and Live Nation maintain that there has been no waiver because they moved to compel arbitration very quickly after discovering that Plaintiff had subjected herself to the 2011 arbitration provision.

To prove that Live Nation and Ticketmaster waived their right to compel arbitration, Plaintiff must show: (1) Defendants knew of their right to arbitration; (2) they acted

9

inconsistently with that right; and (3) their inconsistent acts prejudiced Plaintiff.  *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 728 F.3d 853, 862 (8th Cir. 2013).  "'[I]n light of the strong federal policy in favor of arbitration, any doubts concerning waiver of arbitrability should be resolved in favor of arbitration.'" *Id.*  (quoting *Lewallen v. Green Tree Serv'g, LLC*, 487 F.3d 1085, 1090 (8th Cir.2007)).

"A party acts inconsistently with its right to arbitrate if the party substantially invokes the litigation machinery before asserting its arbitration right." *Se. Stud & Components, Inc. v. Am. Eagle Design Build Studios, LLC*, 588 F.3d 963, 968 (8th Cir. 2009) (internal quotations and citations omitted).  "A party substantially invokes the litigation machinery when, for example, it…engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner." *Id.*   There is no dispute that Defendants "substantially invoked the litigation machinery" in this case prior to filing their motion to compel arbitration.   Defendants removed the case to this Court and filed motions to dismiss long before raising their arbitration defense.  However, Defendants maintain that these actions do not constitute waiver because they were unaware of their right to compel arbitration until Plaintiff provided the relevant discovery responses in September 2013.  Defendants argue that Plaintiff effectively concealed Defendants' right to compel arbitration by excluding the 2011 ticket purchases from her Complaint.[4]

"To safeguard its right to arbitration, a party must 'do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration.' " *ABF Freight Sys., Inc*., 728 F.3d at 862 (quoting *Lewallen*, 487 F.3d at 1091).  The key question in this case is whether Ticketmaster and Live Nation were reasonable in relying on the representations in Plaintiff's Complaint to determine whether they had a right to compel

---

[4] Defendants do not allege that Plaintiff intentionally concealed her 2011 purchases, and no evidence before the Court points to purposeful concealment of the 2011 purchases.

arbitration.   Keeping in mind that doubts concerning waiver should be resolved in favor of arbitration, the Court finds that Defendants' reliance was reasonable and that their late discovery of the right to compel arbitration was justified.

Plaintiffs' Complaint listed four ticket purchases made between 2008 and 2010.  All of these tickets were purchased with the same online Ticketmaster account, and for each of these purchases, Plaintiff listed the corresponding Ticketmaster order number in her Complaint.  While Plaintiff did not include her Ticketmaster account information in the Complaint, these order numbers would presumably allow Ticketmaster to determine which account was used to purchase the tickets.   Nothing in Plaintiff's Complaint indicated that she had purchased additional tickets or that these additional tickets were purchased with a different Ticketmaster account in 2011.

It would be unreasonable to expect Ticketmaster to comb through voluminous records at an early stage in the proceedings to determine whether Plaintiff might possibly have had other Ticketmaster accounts that were not alluded to in the Complaint.  There is no evidence before the Court that Plaintiff gave easily identifiable information when setting up a second Ticketmaster account in 2011 or that Ticketmaster has the capabilities to easily perform a general search for identifiable information on its users.[5]

---

[5] For example, it does not appear that a Ticketmaster user had to enter their first *and* last name when creating an account in 2011.  (ECF No. 53, Exh. 2, p. 13).  The only information required was first name, email address, and country of residence.  Accordingly, the most unique and reliable identifier for a Ticketmaster account was the email address that is used for the account user name.  It does not appear that Ticketmaster could have easily used any information provided in the Complaint to identify the email address/account username used to purchase the 2011 tickets.  However, even if Plaintiff's second account was potentially discoverable based on information supplied in the Complaint, the Court finds that Ticketmaster and Live Nation's reliance on the very specific ticket purchases listed in the Complaint was nonetheless reasonable.

Plaintiff has the burden of proving waiver, and Plaintiff has failed to show that Ticketmaster and Live Nation knew or should have known of their right to compel arbitration when Plaintiff's Complaint was filed in 2012.

The Court will now consider whether Ticketmaster and Live Nation acted inconsistently with their right to compel arbitration after Plaintiff's additional purchases and the arbitration agreement came to light in September 2013. While preparing for depositions in mid-October 2013, Defendants looked closely at the September 9, 2013 discovery responses and realized the significance of Plaintiff's 2011 ticket purchase. On October 30, 2013, Ticketmaster and Live Nation sought leave to amend their answer to add the arbitration defense. On November 6, 2013, Ticketmaster and Live Nation filed the present motion to compel arbitration and shortly thereafter filed a motion to stay litigation pending the resolution of the motion to compel arbitration. (ECF No. 57).

While there was some lag time between receiving the discovery responses, realizing the significance of the responses, and raising the arbitration defense, the Courts finds that it was not significant enough to trigger waiver. Moreover, Plaintiff was not prejudiced by the short delay between September and October. The only action taken by Defendants after September 9, 2013 was the filing of a motion for summary judgment. (ECF No. 43). After realizing the significance of the discovery responses just days after filing the motion for summary judgment, Defendants quickly raised the arbitration defense and asked the Court to stay consideration of the summary judgment motion until the motion to compel arbitration was decided. Plaintiff had not yet responded to the summary judgment motion.

Under these circumstances, the Court finds no intentionally inconsistent acts by Defendants or resulting prejudice to Plaintiff. There is certainly no indication that these

Defendants had any intention of voluntarily relinquishing their right to compel arbitration in favor of pursuing this litigation. *See United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). All of the evidence before the Court points to new information coming to light during discovery and Defendants quickly acting upon the newfound information. Accordingly, the Court finds that Ticketmaster and Live Nation have not waived their right to compel arbitration.

CONCLUSION

For the reasons stated above, the Court finds that the arbitration agreement between Plaintiff, Ticketmaster, and Live Nation is valid and enforceable. Accordingly, the Court finds that Separate Defendants' Motion to Stay and to Compel Arbitration (ECF No. 53) should be and hereby is **GRANTED**. Plaintiff's claims against these Separate Defendants are referred to arbitration in accordance with the parties' agreement. Plaintiff's claims against Ticketmaster and Live Nation are hereby stayed pursuant to 9 U.S.C. § 3, without prejudice to the right of the parties to reopen the proceedings to enforce the arbitrator's decision.

Ticketmaster and Live Nation's Motion to Stay Proceedings Pending Resolution of Motion to Compel Arbitration (ECF No. 57) is hereby **DENIED AS MOOT**. Defendants' Joint Motion for Hearing (ECF No. 85) is **DENIED WITHOUT PREJUDICE**. The Clerk is directed to terminate the Motion for summary Judgment (ECF No. 40) filed on behalf of Live Nation and Ticketmaster. The clerk is also directed to terminate the Joint Motion for Summary Judgment filed on behalf of all Defendants (ECF No. 89) and the Motion for Summary Judgment filed on behalf of Verizon Arena (ECF No. 43). Because the configuration of this case has changed significantly, the Court requests that Verizon Arena refile a single motion for summary judgment combining the issues addressed in its previous two motions.

Finally, the Clerk is directed to terminate Verizon Arena's Motion to Stay Pending Resolution of Arbitration.  (ECF No. 59).  It does not appear that Plaintiff ever responded to the motion, and the Court requires more thorough briefing of the issues raised in the motion.  If Verizon Arena wishes to refile the motion, it should do so by **August 22, 2014**.

**IT IS SO ORDERED**, this 23rd day of July, 2014.

/s/ Susan O. Hickey
Susan O. Hickey
Senior United States District Judge